UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BETH FABER, ALLISON WILLIAMS, and MIKE RYAN<br><br>Plaintiffs,<br><br>v.<br><br>ESPN PRODUCTIONS, INC., ESPN, INC., and THE WALT DISNEY COMPANY in their official capacities; JULIE WALDEN, AMANDA GIFFORD, JAMES PITARO, BOB IGER, BOB CHAPEK, DERICA W. RICE, SUSAN E. ARNOLD, FRANCIS A. DESOUZA and DOES 1 through 10, inclusive, in their individual capacities,<br><br>Defendants. | CIVIL ACTION NO.<br>3:23-CV-00041-RNC<br><br><br>Date:      May 26, 2023 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
RULE 12(B)(2) AND (B)(6) MOTIONS TO DISMISS
& RULE 12(F) MOTION TO STRIKE**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................11

II.   BRIEF SUMMARY OF RELEVANT ALLEGATIONS................................15

III.  PLAINTIFFS' CAUSES OF ACTION ARE FACTUALLY DEFICIENT AND
LEGALLY INFIRM. ...............................................................................18

    A.    Legal Standard .................................................................................18

    B.    Plaintiffs' Constitutional Claims Fail. ....................................................19

          1.    The Corporate Defendants Are Not State Actors. ...................20

                a.    Plaintiffs' Complaint Is Devoid Of Any Allegations
Showing The Government's Entwinement In ESPN's Or
TWDC's Management. ...............................................21

                b.    Plaintiffs Never Allege Government Compulsion. .......24

                c.    Implementing A Vaccine Mandate Is Not A Function
Traditionally *And* Exclusively Performed By The
Government. .............................................................26

          2.    Plaintiffs Have Not Pled A *Prima Facie* Section 1983 Case
Against The Individual Defendants.........................................27

                a.    Plaintiffs Never Allege Six Of The Eight Individual Defendants
Deprived Them Of Their Constitutional Rights..........................28

                b.    The Individual Defendants Allegedly Involved In The
Denial Of Plaintiffs' Exemption Requests Were Not
Acting Under The Color Of State Law. .....................................31

          3.    Plaintiffs' State Constitutional Claims Also Fail. ....................32

    C.    Plaintiffs' Statutory Claims Must Be Dismissed. ...................................33

          1.    Defendants Are Not Bound By The Federal "Religious Freedom
Restoration Act" Or Connecticut's "Religious Restoration Act". ............34

          2.    A Claim Under Connecticut's Anti-Retaliation Law May Not
Be Based On Personal Issues...............................................35

          3.    The Majority Of Faber's And Williams's Statutory Discrimination
Claims  Must Be Dismissed.....................................................36

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

      a.    Faber And Williams Have Not Sufficiently Plead A Hostile Work Environment Claim. ...............................................37

      b.    Faber And Williams Exhausted A Discrete Set Of Discrimination Claims Against Just One Defendant—The Rest Must Be Dismissed. ..........................................38

IV.    THERE IS NO PERSONAL JURISDICTION OVER THE WALT DISNEY COMPANY, ITS EXECUTIVES, OR ITS BOARD MEMBERS.................................40

    A.    Legal Standard .................................................41

    B.    Plaintiffs' Allegations Arise Out Of ESPN's, Not TWDC's, Connecticut Activities..............................................................42

    C.    Plaintiffs Do Not Allege That The TWDC-Associated Defendants Committed A Tort In Connecticut. ..................................................46

V.    THE STATE ACTOR ALLEGATIONS SHOULD BE STRICKEN. ............................46

VI.    CONCLUSION ................................................................49

**ORAL ARGUMENT REQUESTED**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adonna v. United Elec., Radio & Mach. Workers,*
   640 F. Supp. 2d 199 (D. Conn. 2009)................................................................38

*In re Agent Orange Prod. Liab. Litig.,*
   475 F. Supp. 928 (E.D.N.Y. 1979)................................................................48

*Alfano v. Costello,*
   294 F.3d 365 (2d Cir. 2002)................................................................37

*Am. Protein Corp. v. AB Volvo,*
   844 F.2d 56 (2d Cir. 1988)................................................................44

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................18

*Back v. Hastings on Hudson Union Free Sch. Dist.,*
   365 F.3d 107 (2d Cir. 2004)................................................................31

*Baker v. CT Transit,*
   2020 U.S. Dist. LEXIS 227863 (D. Conn. Dec. 4, 2020) ....................................39

*Barrett v. Walt Disney Co.,*
   2003 U.S. Dist. LEXIS 19782 (D. Conn. May 1, 2003) ......................................43

*Blum v. Yaretsky,*
   457 U.S. 991 (1982) ................................................................26

*Boyd v. City of Hartford,*
   2022 U.S. Dist. LEXIS 151866 (D. Conn. Aug. 24, 2022)....................................31

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n,*
   531 U.S. 288 (2001) ................................................................20, 21, 23

*Bristol-Myers Squibb Co. v. Superior Court,*
   137 S. Ct. 1773 (2017)................................................................41, 42, 43

*Brown v. Lockheed Martin Corp.,*
   814 F.3d 619 (2d Cir. 2016)................................................................43

*Buntin v. City of N.Y.,*
   395 F. Supp. 2d 104 (S.D.N.Y. 2005)................................................................32

**ORAL ARGUMENT REQUESTED**

# TABLE OF AUTHORITIES

**Page(s)**

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
  2021 U.S. Dist. LEXIS 187318 (N.D. Cal. Sep. 29, 2021) ..................................44

*Caviezel v. Great Neck Pub. Sch.*,
  701 F. Supp. 2d 414 (E.D.N.Y. 2010) ...............................................................38

*Ceslik v. Miller Ford, Inc.*,
  2006 U.S. Dist. LEXIS 103929 (D. Conn. Feb. 9, 2006).....................................39

*Chin v. Wilhelm*,
  291 F. Supp. 2d 400 (D. Md. 2003).....................................................................33

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010)................................................................................41

*Ciambriello v. Cty. of Nassau*,
  292 F.3d 307 (2d Cir. 2002)................................................................................31

*Ciraci v. J.M. Smucker Co.*,
  62 F.4th 278 (6th Cir. 2023)........................................................................*passim*

*Cologne v. Westfarms Assocs.*,
  192 Conn. 48 (1984)............................................................................................19

*Cotto v. United Techs. Corp.*,
  251 Conn. 1 (1999)..............................................................................................35

*Crowder v. Conlan*,
  740 F.2d 447 (6th Cir. 1984)...............................................................................25

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ...........................................................................................41

*Daley v. Aetna Life & Cas. Co.*,
  249 Conn. 766 (1999)..........................................................................................36

*Danzer v. Norden Sys.*,
  151 F.3d 50 (2d Cir. 1998)..................................................................................37

*Doe v. Yale Univ.*,
  252 Conn. 641 (2000)..........................................................................................44

*Dunbar v. Omnicom Grp., Inc.*,
  2021 U.S. Dist. LEXIS 30124 (D. Conn. Feb. 18, 2021)....................................39

**ORAL ARGUMENT REQUESTED**

# TABLE OF AUTHORITIES

**Page(s)**

*Eaddy v. Jemiola*,
2013 U.S. Dist. LEXIS 15293 (D. Conn. Feb. 5, 2013)......................................19

*Edwards v. Baptiste*,
2006 U.S. Dist. LEXIS 89147 (D. Conn. Dec. 11, 2006) ...................................20

*Fabrikant v. French*,
691 F.3d 193 (2d Cir. 2012)...............................................................................23

*Faison v. Leonard St., LLC*,
2009 U.S. Dist. LEXIS 25078 (S.D.N.Y. Mar. 9, 2009)..............................37, 38

*Fort Bend Cty. v. Davis*,
139 S. Ct. 1843 (2019)........................................................................................38

*Gallop v. Cheney*,
642 F.3d 364 (2d Cir. 2011).........................................................................14, 19

*Gaston v. Coughlin*,
249 F.3d 156 (2d Cir. 2001).................................................................................28

*Gen. Conference Corp. v. McGill*,
617 F.3d 402 (6th Cir. 2010)...............................................................................34

*Gonzales v. Wright*,
2010 U.S. Dist. LEXIS 15953 (N.D.N.Y. Feb. 22, 2010)....................................14

*Grogan v. Blooming Grove Volunteer Ambulance Corps*,
768 F.3d 259 (2d Cir. 2014).....................................................................21, 22, 23

*Hartwick v. Annucci*,
2020 U.S. Dist. LEXIS 215240 (N.D.N.Y. Nov. 18, 2020) ................................27

*Hernandez v. United States*,
939 F.3d 191 (2d Cir. 2019)................................................................................33

*Hersey v. Lonrho, Inc.*,
73 Conn. App. 78 (2002) ..............................................................................43, 45

*Hoffman v. Williamsville Sch. Dist.*,
443 F. App'x 647 (2d Cir. 2011)....................................................................39, 40

*Horgan v. UPS Inc.*,
2022 U.S. Dist. LEXIS 238618 (N.D. Ga. Dec. 6, 2022)....................................26

**ORAL ARGUMENT REQUESTED**

## TABLE OF AUTHORITIES

**Page(s)**

*Horvath v. Westport Library Ass'n,*
362 F.3d 147 (2d Cir. 2004)...........................................................................23

*Howley v. Town of Stratford,*
217 F.3d 141 (2d Cir. 2000)...........................................................................48

*Husain v. Springer,*
494 F.3d 108 (2d Cir. 2007)...........................................................................25

*Huth v. Haslun,*
598 F.3d 70 (2d Cir. 2010).............................................................................36

*Javier v. Deringer-Ney, Inc.,*
578 F. Supp. 2d 368 (D. Conn. 2008).............................................................38

*Johnson v. Tyson Foods, Inc.,*
607 F. Supp. 3d 790 (W.D. Tenn. 2022).........................................................26

*Jones v. Sansom,*
2022 U.S. Dist. LEXIS 59514 (D. Conn. Mar. 31, 2022)..................................39

*Keeton v. Hustler Magazine, Inc.,*
465 U.S. 770 (1984).......................................................................................43

*Kidder v. Hanes,*
2023 U.S. Dist. LEXIS 67741 (W.D.N.Y. Apr. 18, 2023).................................48

*Listecki v. Official Comm. of Unsecured Creditors,*
780 F.3d 731 (7th Cir. 2015)..........................................................................34

*Lopez v. Smiley,*
375 F. Supp. 2d 19 (D. Conn. 2005)...............................................................33

*Mandal v. City of N.Y.,*
2006 U.S. Dist. LEXIS 85216 (S.D.N.Y. Nov. 26, 2006)...................................48

*Manhattan Cmty. Access Corp. v. Halleck,*
139 S. Ct. 1921 (2019)........................................................................ 20, 26, 32

*Matthews v. SBA, Inc.,*
149 Conn. App. 513 (2014) ...........................................................................42

*Maturo v. Nat'l Graphics, Inc.,*
722 F. Supp. 916 (D. Conn. 1989)..................................................................39

**ORAL ARGUMENT REQUESTED**

## TABLE OF AUTHORITIES

**Page(s)**

*McDonald v. Stamford Police Dep't,*
2022 U.S. Dist. LEXIS 84034 (D. Conn. May 10, 2022)..............................................27, 28

*Meng v. Ipanema Shoe Corp.,*
73 F. Supp. 2d 392 (S.D.N.Y. 1999) ..................................................................................44

*Mercer v. Schriro,*
337 F. Supp. 3d 109 (D. Conn. 2018)................................................................................35

*Meritor Sav. Bank, FSB v. Vinson,*
477 U.S. 57 (1986) .............................................................................................................38

*New Dyckman Theatre Corp. v. Radio-Keith-Orpheum Corp.,*
16 F.R.D. 203 (S.D.N.Y. 1954)...................................................................................47, 48

*O'Brien v. Carrier Coach, Inc.,*
2006 U.S. Dist. LEXIS 24779 (W.D.N.Y. Mar. 6, 2006) ...........................................24, 26

*Oden v. SEPTA,*
671 F. App'x 859 (3d Cir. 2016).......................................................................................36

*On Site Gas Sys. v. USF Techs., Inc.,*
553 F. Supp. 2d 182 (D. Conn. 2008)................................................................................42

*Palliardi v. Avon Prods., Inc.,*
2023 Conn. Super. LEXIS 568 (Super. Ct. Apr. 21, 2023)...............................................35

*Par. of St. Paul's Episcopal Church v. Episcopal Diocese of Conn. Donations &*
*Bequests for Church Purposes,*
2006 U.S. Dist. LEXIS 111453 (D. Conn. Aug. 21, 2006)...............................................27

*Perodeau v. City of Hartford,*
259 Conn. 729 (2002).........................................................................................................39

*Rendell-Baker v. Kohn,*
457 U.S. 830 (1982) ...........................................................................................................20

*Richard v. Strom,*
2018 U.S. Dist. LEXIS 196327 (D. Conn. Nov. 19, 2018)................................................32

*Ridgeway v. Royal Bank of Scot. Grp.,*
2012 U.S. Dist. LEXIS 41995 (D. Conn. Mar. 26, 2012)..................................................36

*Savage v. Scripto-Tokai Corp.,*
147 F. Supp. 2d 86 (D. Conn. 2001)..................................................................................41

**ORAL ARGUMENT REQUESTED**

## TABLE OF AUTHORITIES

**Page(s)**

*Sharma v. D'Silva*,
    157 F. Supp. 3d 293 (S.D.N.Y. 2016)...............................................................18

*Snellinger v. Fannie Mae*,
    2022 U.S. Dist. LEXIS 95796 (S.D.N.Y. May 27, 2022)....................................47

*Stefanoni v. Darien Little League, Inc.*,
    101 F. Supp. 3d 160 (D. Conn. 2015)..........................................................22, 24

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999)...........................................................................34

*Sybalski v. Indep. Grp. Home Living Program, Inc.*,
    546 F.3d 255 (2d Cir. 2008)......................................................................21, 26

*Tancredi v. Metro. Life Ins. Co.*,
    316 F.3d 308 (2d Cir. 2003).......................................................................19, 28

*Thomas v. Ashcroft*,
    470 F.3d 491 (2d Cir. 2006)...........................................................................41

*Trinity Christian Sch. v. Comm'n on Human Rights & Opportunities*,
    329 Conn. 684, 189 A.3d 79 (2018)...............................................................34

*Tucker v. Am. Int'l Grp., Inc.*,
    745 F. Supp. 2d 53 (D. Conn. 2010)...............................................................45

*Tucker v. Am. Int'l Grp., Inc.*,
    936 F. Supp. 2d 1 (D. Conn. 2013)............................................................46, 47

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...................................................................................43, 44

*United States v. Int'l Bhd. of Teamsters*,
    941 F.2d 1292 (2d Cir. 1991)..........................................................................19

*Vasquez v. Reece Sch.*,
    2023 U.S. Dist. LEXIS 19836 (S.D.N.Y. Feb. 6, 2023).....................................24

*Veera Venkata Narasimha Narendra Phani Kottapalli v. ASML US, LP*,
    2022 U.S. Dist. LEXIS 117501 (D. Conn. July 5, 2022)....................................36

*Washington v. CT Scoop Shops LLC*,
    2022 U.S. Dist. LEXIS 40410 (D. Conn. Mar. 8, 2022).....................................35

**ORAL ARGUMENT REQUESTED**

# TABLE OF AUTHORITIES

**Page(s)**

*West v. Atkins*,
 487 U.S. 42 (1988) .........................................................................................27

*Will v. Mich. Dep't of State Police*,
 491 U.S. 58 (1989) .........................................................................................27

*Wis. Province of the Soc'y of Jesus v. Cassem*,
 373 F. Supp. 3d 378 (D. Conn. 2019) ...........................................................34

*Wright v. N.Y.C. Off-Track Betting Corp.*,
 2008 U.S. Dist. LEXIS 22567 (S.D.N.Y. Mar. 24, 2008) ..............................40

*Wright v. Waste Pro USA Inc.*,
 2019 U.S. Dist. LEXIS 124175 (D.S.C. July 25, 2019) .................................44

*Wrighten v. Glowski*,
 232 F.3d 119 (2d Cir. 2000) ..........................................................................39

*Zamani v. Bremby*,
 2012 Conn. Super. LEXIS 1295 (Super. Ct. May 16, 2012) ..........................32

**Statutes**

42 U.S.C.
 § 1983 ......................................................................................................*passim*
 § 12101 *et seq.* ("Americans with Disabilities Act") ...............................*passim*
 § 2000bb-1 ("Federal Religious Freedom Restoration Act") ................ 13, 34, 35
 § 2000e *et seq.* ("Title VII") .....................................................................*passim*

Conn. Gen. Stat.
 § 31-51q ..................................................................................................*passim*
 § 33-929(f) ("Corporate Long Arm Statute") .........................................*passim*
 § 46a-60 ("Connecticut Fair Employment Practices Act") .....................*passim*
 § 52-59b(a) ("Individual Long Arm Statute") ...................................................46
 § 52-571b(a) ("Connecticut Religious Restoration Act") ...................... 13, 34, 35

**ORAL ARGUMENT REQUESTED**

I.    **INTRODUCTION**

The matter before this Court is a garden variety case of an employer's alleged religious discrimination and retaliation inappropriately re-packaged as a political and philosophical challenge to the constitutionality of the vaccine mandate at the height of the COVID-19 pandemic, which has killed over a million people in the United States and remains a leading cause of death for Americans.[1]

Plaintiffs Beth Faber, Allison Williams, and Mark Ryan are all former ESPN employees who objected to ESPN's COVID-19 vaccine mandate for various medical, philosophical and religious grounds.  When Faber, Williams, and Ryan respectively sought a religious exemption from ESPN's Human Resources Department, ESPN engaged in an extensive interactive process with each of them to determine whether it could grant an accommodation.  After careful consideration, ESPN denied Plaintiffs' requests for legitimate, non-discriminatory reasons, including that the requested accommodations would create an undue burden to ESPN's business operations.  In response, all three Plaintiffs exercised their rights and declined vaccination.  As a result, Plaintiffs separated from ESPN's employment in late 2021.  Plaintiffs now claim that ESPN denied their exemptions because of religious animus and then terminated them in retaliation for objecting to the vaccine mandate in the first place.

---

[1] *See* COVID Data Tracker, CENTERS FOR DISEASE CONTROL AND PREVENTION (available at https://covid.cdc.gov/covid-data-tracker/#datatracker-home) (last accessed May 26, 2023). The COVID-19 pandemic created particularly significant health, safety, and logistical challenges for the sports entertainment industry.  Without appropriate health and safety measures, an outbreak could quickly become a "super spreader" event and shut down not only that event but also jeopardize a league or team's entire season.

**ORAL ARGUMENT REQUESTED**

Against the backdrop of this straightforward employment law dispute, Plaintiffs demand this Court suspend any belief that ESPN acted as a reasonable employer, business leader, and civic member during a deadly pandemic; and argue as fact an elaborate conspiracy-laden narrative of the government's (specifically the Department of Defense) domination and control of a secret cabal of Fortune 50 companies, including ESPN and The Walt Disney Company,[2] and major sports franchises "to influence and shape public opinion" around the COVID-19 vaccine. *Id.*, ¶ 197.  Plaintiffs then rely on that wholly invented corporate/government "entwinement" to advance a slew of constitutional claims against the Defendants, all of whom are private actors, for violating Plaintiffs' right to religious liberty.

The fatal flaw in Plaintiffs' sprawling (and baseless) narrative is that claims based on a deprivation of a constitutional right require "state action," which exists nowhere in this private dispute between an employer and its former employees.  There is not a single allegation in the Complaint that even remotely suggests that ESPN (or any of the other named Defendants) performed "a traditional, exclusive public function" when mandating the COVID-19 vaccine for its employees.[3]  Likewise, there are no well-pled allegations establishing that ESPN acted "jointly with the government or entwined itself with it" when it implemented that mandate.[4]

---

[2] The Walt Disney Company ("TWDC") is an indirect parent of ESPN Inc., which, in turn, owns ESPN Productions, Inc.  Plaintiffs have sued all three companies, as well as eight other people who are associated with one or more of those businesses. To simplify this motion, Defendants refer to both ESPN Inc. and ESPN Productions, Inc., as "ESPN."

[3] *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 280 (6th Cir. 2023).  In *Ciraci*, the Sixth Circuit considered—and rejected—many of the same "state actor" claims that Plaintiffs have advanced here.

[4] *Id.*

**ORAL ARGUMENT REQUESTED**

And, finally, there are no plausible allegations in the Complaint that the government compelled "ESPN to deny anyone an exemption."[5]

In the absence of factually supported allegations that ESPN, or any named Defendant, is a "state actor," Plaintiffs' constitutional claims, as well as their causes of action under the Federal "Religious Freedom Restoration Act" and Connecticut's "Religious Restoration Act," fail as a matter of law.

Plaintiffs' remaining claims for discrimination under Title VII and the Connecticut Fair Employment Practices Act, and for failure to accommodate under the ADA, fare no better for two reasons. *First*, Faber and Williams—the only Plaintiffs who pled causes of action under Title VII, the CFEPA, or the ADA—failed to exhaust most of those claims. Faber only exhausted a Title VII claim for religious discrimination against ESPN; and Williams only exhausted Title VII claims for religious discrimination and retaliation against ESPN. Faber's Title VII hostile work environment, retaliation, and CFEPA claims accordingly cannot proceed in this forum. Nor can Williams's Title VII hostile work environment, CFEPA, and ADA claims. And the Title VII claims that Faber and Williams did exhaust may only proceed against ESPN. *Second*, Faber's and William's hostile work environment claim is predicated on one, nonactionable stray remark, and fails for that reason as well.

Finally, all three Plaintiffs have failed to plead a *prima facie* case of retaliation for engaging in constitutionally protected conduct because accommodation requests are not "protected speech" as a matter of law.

---

[5] *Id.*

**ORAL ARGUMENT REQUESTED**

Contrary to Plaintiffs' arguments, the only possible disputed issues here are whether ESPN (1) denied Faber's or Williams's accommodation requests, or (2) retaliated against Williams, out of religious animus.  As a result, their only viable causes of action are for religious discrimination, and, as to Williams, for religious retaliation.  This Court should dismiss all of Plaintiffs' remaining claims with prejudice.[6]

At a minimum, this Court should dismiss the entire complaint against TWDC as well as against TWDC's (1) current CEO Bob Iger, (2) former CEO Bob Chapek, (3) board members Derica Rice and Francis deSouza, and (4) former Board Chairperson Susan Arnold.  The Complaint is devoid of allegations that establish that any of these defendants are residents of Connecticut or are subject to the state's long-arm jurisdiction based on tortious conduct committed in the state.  Accordingly, none of these defendants are subject to personal jurisdiction in Connecticut and Plaintiffs fail to meet their burden of establishing otherwise.

Defendants therefore respectfully request, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(6), that this Court dismiss (1) Faber's First Cause of Action against TWDC and the individual Defendants, and Second through Fifteenth Causes of Action against all Defendants, with prejudice; (2) Williams's First and Third Causes of Action against TWDC and the individual Defendants, as well as her Second and Fourth through Fifteenth Causes of Action against all Defendants, with prejudice; *and* (3) Ryan's entire Complaint against all Defendants with prejudice.

---

[6] This Court has "no obligation to entertain pure speculation and conjecture." *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011).  "As the Second Circuit" has "steadily recognized, it is utterly unjust to haul people into federal court to defend against, and disprove, delusions." *Gonzales v. Wright*, 2010 U.S. Dist. LEXIS 15953, at *35 (N.D.N.Y. Feb. 22, 2010).

**ORAL ARGUMENT REQUESTED**

Defendants also respectfully request, pursuant to FRCP 12(f), that this Court strike from the Complaint all of the "state actor" allegations. Those allegations are immaterial to, and have no bearing on, whether ESPN appropriately denied Plaintiffs' religious accommodation requests; Plaintiffs could never present admissible evidence to prove that Defendants are state actors; and allowing those conspiratorial allegations, which span 80 years, to remain in the Complaint will result in immense prejudice to Defendants.

## II.   BRIEF SUMMARY OF RELEVANT ALLEGATIONS.

As required, Defendants assume the truth of the Complaint's allegations solely for purposes of this motion.

From 2014 through 2021, Beth Faber was a Remote Radio Producer for ESPN, producing live sports events from a variety of venues throughout the country.[7]  In May 2021, Amanda Gifford, ESPN's Vice President, Content Strategy & Audio,[8] advised Faber that her job responsibilities required her to get vaccinated by the end of July.[9]  In response, Faber expressed a wide range of concerns about the COVID-19 vaccine, including its safety.[10]  Faber also noted her strong religious beliefs as a basis for that objection.[11]  With the assistance of Julie Walden, ESPN's Human Resources Business Partner,[12] Faber requested an accommodation from ESPN's vaccine mandate based on what she claimed were her sincerely held religious beliefs.[13]  Over the next few months, ESPN appropriately reviewed the sincerity of those beliefs and engaged in an

---

[7] ECF No. 11, ¶¶ 17, 25, 45.
[8] *Id.*, ¶ 8.
[9] *Id.*, ¶ 18.
[10] *Id.*, ¶ 19.
[11] *Id.*
[12] *Id.*, ¶ 7.
[13] *Id.*, ¶¶ 20–22.

ORAL ARGUMENT REQUESTED

ongoing dialogue with Faber about the basis of her requested accommodation.[14]  ESPN initially concluded it did not have enough information to determine the sincerity of Faber's beliefs.[15] Ultimately, however, ESPN deferred on that issue, and subsequently determined that accommodating Faber's request was not realistic for ESPN's business operations.[16]  As an unvaccinated Remote Producer, the safety requirements that leagues, teams, and venues adopted would either (a) totally prohibit her from accessing the sports venues at which she performed her job, or (b) create untenable logistical challenges due to the rapidly shifting and nuanced nature of those safety standards.[17]  Faber decided not to get vaccinated and left ESPN's employment in September 2021.[18]

Allison Williams was a Sideline Reporter for ESPN, predominately covering sporting events at the college and university level.[19]  Like Faber, Williams's job duties required she attend those events in-person at a time when the colleges and universities, their venues and teams, and even the NCAA either totally prohibited access to unvaccinated crew members, or created unsustainable logistical challenges due to ever changing and complicated rules.[20]  In August 2021, Williams requested a medical accommodation for in vitro fertilization, expressing concern about the vaccine's impact on the fetus.[21]  Two weeks later, when Williams' California doctor would not give her a letter supporting the medical exemption, Williams changed course

---

[14] *Id.*, ¶¶ 24–28.
[15] *Id.*, ¶¶ 26, 29.
[16] *Id.*, ¶¶ 36–38, 45, 47.
[17] *Id.*, ¶ 40.
[18] *Id.*, ¶¶ 48.
[19] *Id.*, ¶¶ 51, 63(d), 65.
[20] *Id.,* ¶ 62.
[21] *Id.,* ¶ 57.

**ORAL ARGUMENT REQUESTED**

and sought a religious exemption instead.[22]   As it did with Faber, ESPN ultimately denied

Williams' request because of the significant logistical challenges in scheduling her.[23]   Williams

chose to remain unvaccinated and left ESPN's employment in October 2021.[24]

Finally, Mike Ryan worked for ESPN as a Remote Graphics Operator.[25]   During his

tenure, Ryan worked within ESPN television productions on Monday Night Football, College

World Series, Big 12 Basketball, College Football, and Bowl games, among other events.[26]

After ESPN denied Ryan's request for a flexible work arrangement, which he believed would

allow him to work remotely and avoid vaccination, Ryan sought a religious exemption.[27]   ESPN

spoke with Ryan, considered his request, and weighed whether it could accommodate it.[28]

Ultimately, ESPN was unable to identify any arrangement for Ryan that would not create an

undue hardship, and accordingly denied the exemption.[29]   Like Faber and Williams, Ryan also

decided to remain unvaccinated and his employment with ESPN ended in October 2021.[30]

On February 4, 2022, Faber filed an EEOC charge for religious discrimination against

ESPN and received a right to sue letter in October 2022.[31]   On June 29, 2022, Williams filed her

---

[22] *Id.,* ¶¶ 57–58.
[23] *Id.,* ¶ 62.
[24] *Id.,* ¶¶ 66–67.
[25] *Id.,* ¶¶ 70, 72.
[26] *Id.,* ¶ 74.
[27] *Id.,* ¶¶ 81–85.
[28] *Id.,* ¶ 86.
[29] *Id.,* ¶¶ 47, 66, 86.
[30] *Id.,* ¶ 87.
[31] *Id.,* ¶¶ 49–50.  Though Faber alleges that she filed against "Defendants," her charge confirms that the charge was only against ESPN.  A copy was submitted with Defendants' Request for Judicial Notice.  Defs.' Req. for Judicial Notice, Ex. A.

**ORAL ARGUMENT REQUESTED**

EEOC charge, alleging religious discrimination and retaliation against ESPN[32] and received a right to sue in January 2023.[33]  Ryan did not exhaust any administrative remedies.[34]

Williams and Faber sued ESPN and TWDC on January 11, 2023.[35]  On February 22, 2023, they amended the complaint and added Ryan as a plaintiff.[36]  In addition, Plaintiffs also named current and former TWDC C-Suite executives and board members to support their baseless and legally infirm constitutional claims, which span hundreds of paragraphs in their 136 page Amended Complaint.

This motion responds to that Amended Complaint.

## III.   PLAINTIFFS' CAUSES OF ACTION ARE FACTUALLY DEFICIENT AND LEGALLY INFIRM.

### A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Dismissal is justified where 'the complaint lacks an allegation regarding an element necessary to obtain relief.'"  *Sharma v. D'Silva*, 157 F. Supp. 3d 293, 300 (S.D.N.Y. 2016) (citation omitted).

"A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do."  *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And "'[n]aked assertion[s]' devoid of 'further factual enhancement'"

---

[32] ECF No. 11, ¶ 68; Defs.' Req. for Judicial Notice, Ex. B.
[33] ECF No. 11, ¶ 69.
[34] He has thus not alleged claims under Title VII or Connecticut's Fair Employment Practices Act.
[35] ECF No. 1
[36] ECF No. 11.

**ORAL ARGUMENT REQUESTED**

should be dismissed.  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "Moreover, even if the complaint contains sufficiently 'well-pleaded' allegations, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'"  *Gallop*, 642 F.3d at 368 (citations omitted).  Thus, a "court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic,' or 'delusional.'"  *Id.* (citations omitted).

### B.    Plaintiffs' Constitutional Claims Fail.

Plaintiffs are wrong that ESPN's vaccine mandate, and its refusal to grant their respective requests for a religious exemption, violated their rights to religious liberty and equal protection under the United States and Connecticut Constitutions.[37]  The United States and Connecticut constitutions regulate the government, not private parties.  *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991); *Cologne v. Westfarms Assocs.*, 192 Conn. 48, 62 (1984) (explaining there "is nothing in the history of" Connecticut's constitution or bill of rights "to suggest that they were intended to guard against private interference with such right").  Thus, any "plaintiff pressing a claim of violation of [their] constitutional rights" must "show state action."  *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003); *see also Eaddy v. Jemiola*, 2013 U.S. Dist. LEXIS 15293, at *8 (D. Conn. Feb. 5, 2013) (noting "a plaintiff must allege that he was injured by [] a state actor" to "state a claim under Section 1983 or the Connecticut Constitution").  Plaintiffs' vast web of conspiratorial allegations fail to demonstrate that any named corporate entity, or individual Defendant, is a state actor.

---

[37] *See* ECF No. 11, Cause of Actions No. 9 (¶¶ 282–86), No. 10 (¶¶ 287–95), No. 13 (¶¶ 321–43), No. 14 (¶¶ 344–50).

**ORAL ARGUMENT REQUESTED**

### 1.    The Corporate Defendants Are Not State Actors.

Section 1983 only permits lawsuits against a "person who, under color of" state law, causes a constitutional deprivation.  42 U.S.C. § 1983.  To sufficiently plead a § 1983 constitutional claim, a plaintiff must allege facts that establish each of the following three elements: (1) a deprivation of a constitutional right; (2) caused by a person or entity who; (3) acted under the color of state law (*i.e.* was a state actor).[38]  Here, Plaintiffs' allegations that TWDC and ESPN infringed their constitutional right to exercise their religion freely only satisfy two of those three prongs because neither TWDC nor ESPN (nor any of the individual Defendants) are state actors.

"'Only in rare circumstances can a private party be viewed as a "state actor" for section 1983 purposes.'" *Edwards v. Baptiste*, 2006 U.S. Dist. LEXIS 89147, at *6 (D. Conn. Dec. 11, 2006) (quoting *Doe v. Rosenberg*, 996 F. Supp. 343, 348 (S.D.N.Y. 1998) (*aff'd* 166 F.3d 507 (2d Cir. 1999)).  And these "rare circumstances" only exist where the State has either (1) entwined itself with a private party such that the two are acting jointly; (2) exerted coercive power to effectively control the private entity; or (3) delegated a public function to the private party that was traditionally and exclusive a prerogative of the State.  *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001); *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019); *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008).  In *Sybalski*, the Second Circuit dubbed these tests as the "joint action" or

---

[38] "In cases under § 1983, 'under color' of law" and "state action" are virtually interchangeable.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quotation omitted).

**ORAL ARGUMENT REQUESTED**

"close nexus" test; the "compulsion" test; and the "public function" test. 546 F.3d at 257.

Plaintiffs do not pass any of them.

> **a.** **Plaintiffs' Complaint Is Devoid Of Any Allegations Showing The Government's Entwinement In ESPN's Or TWDC's Management.**

Plaintiffs rely heavily on buzzwords from *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n* (531 U.S. 288 (2001)) to suggest an "entwinement" between the corporate Defendants and the federal government, thereby implicating the "joint action" or "close nexus" test.[39] *Sybalski*, 546 F.3d at 257. Plaintiffs have not come close to pleading any "joint action" or "a close nexus" between ESPN and/or TWDC and the government, much less one that justifies treating those entities as state actors instead of private ones.

"[U]nder an entwinement theory," state action only exists "'when government is entwined in [a private entity's] management or control.'" *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 268 (2d Cir. 2014) (quoting *Brentwood Acad.*, 531 U.S. at 296). "[I]n the context of an organization's employment decisions" though, the government must be so entwined "with [the defendant's] management that" the employer's "personnel decisions are fairly attributable to the State." *Stefanoni v. Darien Little League, Inc.*, 101 F. Supp. 3d 160, 174 (D. Conn. 2015) (quotation omitted).

---

[39] *See, e.g.*, ECF No. 11, ¶ 90 ("There was such a web of relationships . . . such that there was pervasive public entwinement in Defendants' management or control as pertains to the Disney/ESPN mandate."); ¶ 103 ("Disney is entwined with the military and the Defense Department."); ¶ 166 (claiming "financial entwinement between former (or continuing) top government officials, Disney/ESPN and the NBA shows there exists 'significant encouragement,' 'joint action,' 'agency control,' and 'symbiosis,' the likes of which qualify Disney/ESPN as a state actor"); ¶ 203 ("[T]he evidence of the joint involvement of Disney/ESPN with the military and the Defense Department and the government establishes that Disney/ESPN and the government were entwined together.").

-21-

**ORAL ARGUMENT REQUESTED**

Plaintiffs have offered no facts from which this Court can plausibly infer that "the State is so entwined with" the corporate Defendants' "management that its personnel decisions" render the vaccine mandate "attributable to the State." *Grogan*, 768 F.3d at 268. Their "proof" that the federal government pulls the strings at ESPN turns on wholly unremarkable conduct of TWDC, ESPN's indirect parent: (1) TWDC's former CEO attended a summit on vaccine mandates at the White House with numerous other business leaders; (2) both President Biden and TWDC's former CEO independently supported the COVID-19 vaccine; (3) TWDC hired two people with former connections to the Biden administration for communications positions within the company; and (4) several TWDC Board Members also work with other private companies that either deal in pharmaceuticals or have some connection to the defense industry.[40] Nothing in any of those allegations even remotely suggests that the Biden Administration managed or controlled, or was involved in, either the formation or implementation of either ESPN's or

---

[40] *See* ECF No 11, ¶ 94 (reporting TWDC's ex-CEO Bob Chapek—along with representatives from several other businesses—attended a summit held by President Biden on vaccine mandates); ¶ 95 (noting TWDC hired two people who worked with the Biden administration into communication roles); ¶ 96 (claiming on the same day President Biden called on private businesses to mandate vaccination, Chapek told Jim Cramer on Mad Money that Chapek would "love to see" TWDC employees vaccinated); ¶ 116–17 (stating TWDC Board member Derica Rice also (1) sits on the board of Bristol-Meyers Squibb, a pharmaceutical company; (2) serves on the board of the Carlyle Group, which has ties to the defense industry; and (3) leads CVS Health's pharmacy benefits management business); ¶ 122 (noting Susan Arnold—Chair of TWDC's Board of Directors—also sits on the Carlyle Group board); ¶ 124 (reporting TWDC Board Member Francis deSouza is also CEO of Illumina, which received COVID-19 funding from the Department of Defense).

**ORAL ARGUMENT REQUESTED**

TWDC's[41] COVID-19 vaccine mandate or ESPN's personnel decisions to deny Plaintiffs a

religious exemption and then separate them when they failed to comply with that mandate.[42]

In fact, Plaintiffs never allege that *anyone* in the government was involved in ESPN's

decision to deny their religious exemptions, or "played any role in the . . . process that resulted

in" their separation from ESPN.  *Grogan*, 768 F.3d at 269; *see also Fabrikant v. French*, 691

F.3d 193, 207 (2d Cir. 2012) (explaining that what matters "for purposes of § 1983" is the state's

alleged involvement in "'the specific conduct of which the plaintiff complains.'") (citation

omitted).  To the contrary, Plaintiffs admit that President Biden never said exemptions "would

not be granted" or that "they be disfavored,"[43] and that it was ESPN, acting independently and

on its own accord, that went "too far" when it denied Plaintiffs' exemptions.[44]

In sum, Plaintiffs never claim that anyone they have hauled into court are government

officials.  *See Brentwood Acad.*, 531 U.S. 288, 299-300 (finding entwinement, in part, because

"84% of [the] membership" of a private organization consisted of government "officials acting in

their official capacity").  Nor do they argue that the government appointed anyone to TWDC's

Board.  *See Horvath v. Westport Library Ass'n*, 362 F.3d 147, 152 (2d Cir. 2004) (concluding a

private library was a state actor as it was "governed by a Board of Trustees, half of whose

---

[41] ESPN instituted a separate COVID-19 vaccine mandate before TWDC did because of the sports entertainment industry's particular health and safety requirements.

[42] Plaintiffs also note Jean Kelly—who is married to ESPN President James Pitaro—appeared in *Top Gun: Maverick*, in which "Disney's team" had some unspecified stake, despite the fact it was "a Paramount Pictures release."  ECF No 11, ¶ 105.  And they report Congress investigated Isaac Perlmutter, who allegedly owns shares in TWDC, for malfeasance committed while he was "shadow head of the Department of Veteran Affairs during the Trump Administration."  *Id.*, ¶ 106.  On their face, these allegations have nothing to do with ESPN's vaccine exemption process.

[43] ECF No. 11, ¶ 110.

[44] *Id.*, ¶ 112.

**ORAL ARGUMENT REQUESTED**

members are appointed by the Town" government).  Nor do they claim that ESPN "den[ied] the claimants' request for an exemption using federal officials' assistance."  *Ciraci*, 62 F.4th at 282.  Instead, Plaintiffs predicated their entire case on the "purely internal management decisions" of a private actor, which as a matter of law, "cannot constitute state action."  *Stefanoni*, 101 F. Supp. 3d at 174.  Accordingly, their "state actor" claims fail the entwinement test.

### b.   Plaintiffs Never Allege Government Compulsion.

Plaintiffs fail the compulsion test because they have not alleged that state regulation "'evidence[s] governmental coercion or encouragement' over the particular activity that allegedly caused the constitutional injury." *Vasquez v. Reece Sch.*, 2023 U.S. Dist. LEXIS 19836, at *6 (S.D.N.Y. Feb. 6, 2023) (*quoting Dawkins v. Biondi Educ. Ctr.*, 164 F. Supp. 3d 518, 526 (S.D.N.Y. 2016)).[45]  "Courts in the Second Circuit have held that in order to satisfy this test, plaintiff must allege 'actual coercion' by a state actor that impacts upon the private actor's decision-making." *O'Brien v. Carrier Coach, Inc.*, 2006 U.S. Dist. LEXIS 24779, at *10 (W.D.N.Y. Mar. 6, 2006).  Merely alleging that a private company "receives, and is dependent upon, an unspecified amount of government aid" is not enough. *Id.*  Yet, Plaintiffs base their bid

---

[45] It is worth noting "cases typically look to this inquiry in a distinct setting, one in which the claimant seeks to sue the state or federal government and uses the actions of a private entity to connect the lawsuit to the government." *Ciraci*, 62 F.4th at 283.  Here, Plaintiffs are not arguing that ESPN's (or TWDC's) "implementation of a . . . vaccine mandate amounts to state action sufficient to sue the government." Just the opposite. Plaintiffs contend that the corporate Defendants "count[] as the government." *Id.*

**ORAL ARGUMENT REQUESTED**

to show government coercion solely on ESPN's contractual remuneration from professional sports leagues Plaintiffs speculate are nebulously related to the military. [46]

Further, even if ESPN somehow derived a direct, monetary benefit from the nebulous relationship Plaintiffs have sketched between sports and the government, "[t]he actions of a private entity do not become state action merely because the government provides substantial funding to the private party." *Crowder v. Conlan*, 740 F.2d 447, 450 (6th Cir. 1984); *Husain v. Springer*, 494 F.3d 108, 134 (2d Cir. 2007) ("[P]ublic funding . . . will not transform a private actor into a state actor.") (quotation omitted).

Rather, just as with entwinement, when "assess[ing] coercion," courts "examine 'the specific conduct of which [the claimants] complain[],'" here, the denial of their religious exemptions." *Ciraci*, 62 F.4th at 283 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999). Notably absent from the Complaint is a single allegation that anyone at ESPN (or at TWDC) (1) spoke to someone in the government about Plaintiffs' exemption requests, and (2) that any government official directed ESPN not to grant those requests.

In sum, Plaintiffs "cannot satisfy the state compulsion test" because they have not alleged that Defendants' "employment decisions generally—or the decision not to" grant Plaintiffs an

---

[46] For example, Plaintiffs allege (1) the United States Military and the National Basketball Association have partnered on various community service projects (ECF No. 11, ¶¶ 147–51); (2) the "United States military has inherently 'coercive power' in any mission it pursues with rigor" (*id.,* ¶ 155); (3) the military somehow controls the NBA because a retired general serves on its "Officiating Advisory Counsel" (*id.*, ¶ 159); (4) it used that control to advance the military's mission of "promoting [] vaccination" (*id.,* ¶ 161); (5) a broadcasting contract, and Iger's connection to the NBA, shows "the NBA," and apparently (by extension) the military is "deeply entwined with ESPN and Disney" (*id.,* ¶ 161);  and thus (6) the NBA's high "Covid-19 vaccination rates" is the result of "Disney/ESPN" doing "the Defense Department's bidding" (*id.,* ¶ 179).

**ORAL ARGUMENT REQUESTED**

exemption "specifically"—were "actually coerced by a state actor." *O'Brien*, 2006 U.S. Dist.

LEXIS 24779, at *13; *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) ("Mere approval of

or acquiescence in the initiatives of a private party is not sufficient to justify holding the State

responsible.").

**c.     Implementing A Vaccine Mandate Is Not A Function Traditionally *And* Exclusively Performed By The Government.**

Finally, Plaintiffs' conclusory and factually unsupported conjecture that the Department

of Defense "entrusted" Defendants "to perform a traditional government function" of vaccinating

people from disease fails to satisfy the public function test because the government has not

traditionally *and* exclusively performed that function.[47]

Numerous courts nationwide have concluded that implementing "[a] vaccine mandate

does not count as a public function traditionally handled just by the State." *Ciraci*, 62 F.4th at

282 (quotation omitted); *Johnson v. Tyson Foods, Inc.*, 607 F. Supp. 3d 790, 800 (W.D. Tenn.

2022) ("A private business's implementation of an employee vaccination policy is not akin to

any of 'those limited activities — for example running a city — that have "traditionally and

exclusively" been performed by the government.'"); *Horgan v. UPS Inc.*, 2022 U.S. Dist. LEXIS

238618, at *9 (N.D. Ga. Dec. 6, 2022) (finding "vaccine mandates" are not "traditionally or

---

[47] ECF No. 11, ¶¶ 101–102.  For a private entity to qualify as a state actor as a result of exercising "'powers traditionally exclusively reserved to the State,'" "the government must have traditionally *and* exclusively performed the function" at-issue.  *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1928, 1929 (citation omitted) (emphasizing that the "Court has stressed that 'very few' functions fall into [this] category").  While the Complaint also strains to transform TWDC into a recruitment tool, which is arguably another state function, those allegations are irrelevant to the injury Plaintiffs claim. Plaintiffs "must allege that the state was involved 'with the *activity that caused the injury*' giving rise to the action."  *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257-58 (2d Cir. 2008).  Here, that activity is the implementation and rollout of a COVID-19 vaccine, not the recruitment of military personnel.

-26-

**ORAL ARGUMENT REQUESTED**

exclusively a state function"); *see also Par. of St. Paul's Episcopal Church v. Episcopal Diocese of Conn. Donations & Bequests for Church Purposes*, 2006 U.S. Dist. LEXIS 111453, at *17 (D. Conn. Aug. 21, 2006) ("Provision of health care services . . . is not an <u>exclusively</u> public function.").

As the foregoing demonstrates, Plaintiffs' conspiratorial inferences and threadbare allegations confirm that (i) ESPN and TWDC are not proxies for the government; (ii) their employees and executives do not work for the government; and (iii) TWDC's Board Members are not appointed by, or officials with, the government.   As a result, whether examined under the entwinement, compulsion, or public function test, neither ESPN nor TWDC may be held liable for violating Plaintiffs' constitutional rights.  Accordingly, Plaintiffs constitutional claims against both must be dismissed with prejudice.

2.    **Plaintiffs Have Not Pled A *Prima Facie* Section 1983 Case Against The Individual Defendants.**

Plaintiffs' constitutional claims must also be dismissed with prejudice against the individual Defendants because none of them are state actors either.[48]  Plaintiffs do not allege that any of the individual Defendants—all of whom are current or former employees, executives, or directors of either TWDC or ESPN—are "government officials."  *See West v. Atkins*, 487 U.S. 42, 50 (1988) (explaining a typical "defendant in a § 1983 suit acts under color of state law when

_____

[48] Section 1983 does not allow lawsuits against state actors in their official capacity as "neither a State nor its officials acting in their official capacities are 'persons' under § 1983*." Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  And, a § 1983 civil rights claim may only be brought against someone in their individual capacity if that person is either a (1) "government official[] acting under the color of state law or" (2) "private individuals acting as instruments of the state."  *McDonald v. Stamford Police Dep't*, 2022 U.S. Dist. LEXIS 84034, at *7 (D. Conn. May 10, 2022); *Hartwick v. Annucci*, 2020 U.S. Dist. LEXIS 215240, at *2 n.2 (N.D.N.Y. Nov. 18, 2020).

**ORAL ARGUMENT REQUESTED**

he abuses the position given to him by the State," rendering the defendant "a public employee").

Nor have Plaintiffs advanced sufficient factual allegations that any of these "private individuals"

were even involved, much less "acting as instruments of the state," when ESPN denied

Plaintiffs' respective requests for a religious exemption.  *McDonald*, 2022 U.S. Dist. LEXIS

84034, at *7; *see also Tancredi*, 316 F.3d at 312 ("When analyzing allegations of state action, we

begin 'by identifying the specific conduct of which the plaintiff complains.'") (citation omitted).

Having failed to carry their pleading burden, Plaintiffs' § 1983 claims against each individual

Defendant must be dismissed.

> **a.      Plaintiffs Never Allege Six Of The Eight Individual Defendants Deprived Them Of Their Constitutional Rights.**

"[P]roof of an individual defendant's personal involvement in the alleged wrong is . . . a

prerequisite to . . . liability on a claim for damages under § 1983." *Gaston v. Coughlin*, 249 F.3d

156, 164 (2d Cir. 2001) ("*Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) ("[L]iability . . .

under § 1983 requires personal involvement by a defendant, who must act with discriminatory

purpose.").

Amanda Gifford and Julie Walden are the only individual Defendants Plaintiffs allege

were personally involved in the decisions to deny their religious exemptions.  While Bob Iger,

Bob Chapek, Jimmy Pitaro, Derica W. Rice, Francis A. Desouza and Susan E. Arnold

(collectively, the "Executive Board Members") are conclusorily identified in the Complaint as

"state actors," Plaintiffs never accuse any of them of participating in those decisions or in any

other wrongdoing for which Plaintiffs are seeking redress.[49]  And, Plaintiffs certainly never

---

[49] *Id.*, ¶¶ 9–14.

-28-

**ORAL ARGUMENT REQUESTED**

explain what personal involvement the current and former CEO of TWDC, the President of ESPN, and three TWDC board members could possibly have had in ESPN's decision to deny a religious exemption to three non-executive employees.

The allegations concerning the Executive Defendants amount to nothing more than random observations about the Executive Defendants' public statements or business associations. Thus, for example, Plaintiffs recount that Bob Iger (1) used the success of Disney+, ESPN+, and Hulu to support his performance bonus, and (2) noted he helped to bring "'sports to fans by hosting the MLS and NBA seasons at the ESPN Wide World of Sports complex in Orlando, Florida, with extensive safety measures inside the bubble.'"[50]  Plaintiffs also point out that Mr. Iger allegedly "took credit for the decision not to discipline Jemele Hill" after she called President Trump a White Supremacist.[51]  And finally, Plaintiffs speculate that Mr. Iger's "longstanding ties to the NBA," coupled with the NBA Commissioner Adam Silver's admiration of him creates a shaky connection between Bob Iger, TWDC, and the military.[52]  Significantly, neither the COVID-19 vaccine mandate nor ESPN's decision to deny Plaintiffs' religious exemption request are even vaguely mentioned.

ESPN's decision to deny Plaintiffs' request is also nowhere to be found in the allegations about Bob Chapek, Jimmy Pitaro, Derica Rice, Susan Arnold and Francis deSouza.  Chapek, TWDC's former CEO, is alleged to have attend a summit on, and given an interview about

---

[50] *Id.*, ¶¶ 129–30.  Plaintiffs' rely on these allegations to establish TWDC's control over ESPN.  TWDC's alleged purported control over ESPN is irrelevant to whether these particular allegations demonstrate that Bob Iger individually is a "state actor" who actually participated in the decision to deny these Plaintiffs a religious exemption.  And they do not.

[51] *Id.*, ¶ 139.

[52] *Id.*, ¶¶ 143–44, 173.  That tenuous connection is detailed *supra* n. 46.

**ORAL ARGUMENT REQUESTED**

COVID-19 vaccines, and to have taken "credit for his influence over ESPN and its success and content delivery."[53]  Pitaro's alleged connection to the alleged wrongdoing is even more tenuous. Plaintiffs (1) note his wife was in "Top Gun: Maverick," a movie released by Paramount Pictures; (2) report "John Skipper was succeeded by James Pitaro" as ESPN's President; and (3) claim "Pitaro [] report[ed] to the Disney CEO, Chapek, from 2019-2022, and Disney CEO Iger since November 2022."[54]

TWDC Board member Derica Rice was apparently named as a defendant not because he was involved with the decision to deny Plaintiffs' request for a religious exemption, but because he (1) "currently 'leads the pharmacy benefits management business of CVS Health;'" which was "essentially the military's delivery mechanism for the Covid-19 vaccine;" (2) sits on "the board of directors of the global biopharmaceutical company Bristol-Myers Squibb and" the Carlyle Group, and thus "had something to say about the Disney corporate-wide mandate;" (3) as "a member of the board of directors . . . Mr. Rice's experience of value includes that which relates to the vaccine, the mandates and the defense industry;" and (4) is "on the [TWDC] board because of [his] relevant expertise" in the "pharmaceutical and or the defense industry."[55] Current TWDC Board Member Francis deSouza and former TWDC Board Member Susan Arnold seem to be Defendants only because they have experience in pharmaceuticals or some tenuous connection to the defense industry.[56]

---

[53] *Id.*, ¶ 94, 96, 131.
[54] *Id.*, ¶¶ 105, 141–42.
[55] *Id.*, ¶¶ 116–17, 119, 121, 124.
[56] *Id.*, ¶ 124; *Id.*, ¶¶ 122, 124.

**ORAL ARGUMENT REQUESTED**

None of these allegations, even taken as true, establish the "personal involvement of" these six "defendants in [the] alleged constitutional deprivation" about which Plaintiffs complain. *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (quotation omitted). As such, Plaintiffs' § 1983 claims fail against as against Bob Iger, Bob Chapek, Jimmy Pitaro, Derica Rice, Susan Arnold, and Francis deSouza and must be dismissed with prejudice.

> **b.    The Individual Defendants Allegedly Involved In The Denial Of Plaintiffs' Exemption Requests Were Not Acting Under The Color Of State Law.**

Plaintiffs § 1983 claims also fail as against Gifford and Walden because they were not "government officials or private individuals acting under the color of state law" when they allegedly denied Plaintiffs' religious exemption requests. *Boyd v. City of Hartford*, 2022 U.S. Dist. LEXIS 151866, at *12 (D. Conn. Aug. 24, 2022).

As with the Executive Defendants, Plaintiffs do not even attempt to claim that Gifford and Walden are government officials. Instead, construing the Complaint liberally, Plaintiffs at best make the tenuous and wholly conclusory claim that Walden and Gifford were "willful participant[s] in joint activity with the State or its agents." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (quotation omitted). But the only relevant state activity Plaintiffs identify is "the Biden Administration's" issuance of an "Executive Order expecting companies with greater than 100 employees to mandate the vaccination."[57] Notably, that "Executive Order," which never came into effect "did not tell [ESPN] to deny exemptions to anyone." *Ciraci*, 62 F.4th at 283.

---

[57] ECF No 11, ¶ 90.

**ORAL ARGUMENT REQUESTED**

According to the Complaint, Walden and Gifford denied Plaintiffs' exemption requests on behalf of ESPN.[58]  The Supreme Court has unequivocally held that "[b]eing regulated by the State does not make one a state actor."  *Manhattan Cmty. Access Corp,* 139 S. Ct. at 1932. Nothing in this Complaint renders Gifford and Walden state actors.  Accordingly, Plaintiffs' § 1983 claims also fail against these individual Defendants.

### 3.   Plaintiffs' State Constitutional Claims Also Fail.

"Section 1983" only permits lawsuits against the federal government for violations of the United States constitution; it "is not available to remedy violations of state law, including violations of a state constitution."  *Zamani v. Bremby*, 2012 Conn. Super. LEXIS 1295, at *10-12 (Super. Ct. May 16, 2012); *see also Buntin v. City of N.Y.*, 395 F. Supp. 2d 104, 107 (S.D.N.Y. 2005) (characterizing "Section 1983" as "the vehicle by which private citizens may seek recovery for violations of other federal laws or the United States Constitution").  Accordingly, "[t]here is no established private right of action under the religious discrimination" or "equal protection provisions . . . of the Connecticut Constitution."  *Richard v. Strom*, 2018 U.S. Dist.

---

[58] *See, e.g.*, ECF No. 11, ¶ 26 ("Walden sent Faber an email correspondence indicating ESPN's concerns about the religious nature of her request"); ¶ 35 ("ESPN did not go through with [Faber's] termination on the scheduled date"); ¶ 36 ("ESPN stated it was going to defer on ascertaining [Faber's] sincerity"); ¶ 45 ("ESPN conjured up a burden that simply did not exist and one that did not jibe with reality");¶ 63(d) ("As with Plaintiff Faber . . . ESPN conjured up a burden" to accommodating Williams "that simply did not exist and one that did not jibe with reality").

**ORAL ARGUMENT REQUESTED**

LEXIS 196327, at *24 (D. Conn. Nov. 19, 2018).[59]  And therefore, whether any of the

Defendants are state actors—and they are not—is irrelevant to the viability of Plaintiffs' causes

of action for violations of the Connecticut state constitution.

    In any event, Plaintiffs only allege that Defendants are *federal* actors,[60] not that they

acted at the behest of the Connecticut government.  Accordingly, as Defendants were allegedly

only "acting under the color of federal law," Plaintiffs' claims under Connecticut's Constitution

cannot survive.  *Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019); *see also Chin v.

Wilhelm*, 291 F. Supp. 2d 400, 405 (D. Md. 2003) ("It does not appear . . . that a plaintiff may

sue a federal officer in his individual capacity for alleged violations of a state constitution.").

## C.    Plaintiffs' Statutory Claims Must Be Dismissed.

    This Court should also dismiss Plaintiffs' claims under (1) the Federal "Religious

Freedom Restoration Act" and Connecticut's "Religious Restoration Act;" (2) Connecticut's

---

[59] In *Binette v. Sabo*, Connecticut's Supreme Court "created a narrow cause of action for money damages under the Article First, §§ 7 and 9 of the Connecticut Constitution for illegal searches and seizures of private homes by police officers, a cause of action that is equivalent to the federal *Bivens* action under the Fourth Amendment to the United States Constitution."  *Lopez v. Smiley*, 375 F. Supp. 2d 19, 23 (D. Conn. 2005) (citing 244 Conn. 23, 47 (1998)).  However, *Binette* "emphasize[d] that our decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." 244 Conn. at 47.

[60] *See, e.g.*, ECF No. 11, at ¶ 90 (alleging Defendants' use of "the Biden Administration's Executive Order expecting companies with greater than 100 employees to mandate the vaccination" to justify its vaccine mandate shows they are state actors), ¶ 91(b) (claiming "Disney has a symbiotic relationship with the Defense Department, which has a joint relationship with the CDC and the HHS"—all of which are federal agencies), ¶ 93 (arguing "a relationship as strong and intertwined as that between the Defense Department and Disney, who owns 80% of ESPN, qualifies Defendants for treatment as a state actor"), ¶ 95 (claiming TWDC's hiring of a prior Biden Administration official proves "[a]dditional management at Disney came directly from the Biden Administration, and from the Biden Administration's vaccine effort").

**ORAL ARGUMENT REQUESTED**

anti-retaliation law, as codified in Conn. Gen. Stat. § 31-51q; and (3) Title VII, the ADA, and

Connecticut's analogous Fair Employment Practices Act.

### 1.     Defendants Are Not Bound By The Federal "Religious Freedom Restoration Act" Or Connecticut's "Religious Restoration Act".

Under the RFRA, a "person whose religious exercise has been burdened in violation of

this section may assert" a claim "and obtain appropriate relief against **a government**."  42

U.S.C. § 2000bb-1 (c) (emphasis added); *see also Sutton v. Providence St. Joseph Med. Ctr.*, 192

F.3d 826, 834 (9th Cir. 1999) (noting the "RFRA does not expressly include private employers

within its reach"); *Gen. Conference Corp. v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010) ("The

text of the statute makes quite clear that Congress intended RFRA to apply only to suits in which

the government is a party."); *Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731,

737 (7th Cir. 2015) ("The plain language is clear that RFRA only applies when the government

is a party."); *Wis. Province of the Soc'y of Jesus v. Cassem*, 373 F. Supp. 3d 378, 390 (D. Conn.

2019) (noting the RFRA's text "lends itself to the interpretation that the Government must be

taking some action in order for RFRA to apply").  As demonstrated above, none of the

Defendants qualify as "the government" or "state actors."

The same is true of their claims under Connecticut's analogous "Religious Restoration

Act."[61]  The RRA binds *only* the "state or any political subdivision of the state" from burdening

the exercise of religion.  Conn. Gen. Stat. § 52-571b(a).  None of the Defendants are "a

'government' or a 'state or any political subdivision of the state' against which these claims may

---

[61] Connecticut's Supreme Court has noted that the Religious Restoration Act "is modeled after the federal Religious Freedom Restoration Act."  *Trinity Christian Sch. v. Comm'n on Human Rights & Opportunities*, 329 Conn. 684, 686 n.2, 189 A.3d 79, 81 (2018).

**ORAL ARGUMENT REQUESTED**

be brought." *Palliardi v. Avon Prods., Inc.*, 2023 Conn. Super. LEXIS 568, at *90 (Super. Ct. Apr. 21, 2023).

Accordingly, Plaintiffs' RFRA and RRA claims thus fail as a matter of law and must be dismissed with prejudice.

### 2.    A Claim Under Connecticut's Anti-Retaliation Law May Not Be Based On Personal Issues.

Connecticut General Statute § 31-51q bars private employers from "subject[ing] or threaten[ing] to subject any employee to discipline or discharge" for exercising certain constitutional rights.[62]  Plaintiffs claim their "speech"—"requesting a religious exemption"— "addressed matters of public concern, and was accordingly protected by both" the federal and state constitution.  ECF No. 11, ¶ 355, 359.  And they allege Defendants' decision not to accommodate their request constituted unlawful retaliation.  *Id.*, ¶¶ 360–61.  Plaintiffs are wrong and their § 31-51q claims must be dismissed for two reasons.

As an initial matter, Plaintiffs' § 31-51q claims must be dismissed against all of the individual Defendants because § 31-51q does not impose individual liability; the plain language of the statute limits its application to employers.  *Washington v. CT Scoop Shops LLC*, 2022 U.S. Dist. LEXIS 40410, at *25 (D. Conn. Mar. 8, 2022); *see also Mercer v. Schriro*, 337 F. Supp. 3d 109, 140–41 (D. Conn. 2018) (collecting cases).

Moreover, § 31-51q "applies only to expressions regarding public concerns that are motivated by an employee's desire to speak out as a citizen."  *Cotto v. United Techs. Corp.*, 251

---

[62] Plaintiffs § Section 31-51q are governed under the version in effect in 2021 when they were separated and not under the amended version that became effective July 1, 2022.

ORAL ARGUMENT REQUESTED

Conn. 1, 17 (1999).  The statute "provide[s] no security with respect to statements that address wholly personal matters." *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 778 (1999).

Courts have repeatedly held that "request[s] for [] individual accommodation" "fall squarely into the category of 'mundane employment grievances' and are [thus] not protected speech under the First Amendment." *Oden v. SEPTA*, 671 F. App'x 859, 863 (3d Cir. 2016); *Huth v. Haslun*, 598 F.3d 70, 74 (2d Cir. 2010) (explaining speech that is "personal in nature and generally related to [an employee's] own situation" is not protected by the First Amendment) (quotation omitted); *see also Ridgeway v. Royal Bank of Scot. Grp.*, 2012 U.S. Dist. LEXIS 41995, at *44 (D. Conn. Mar. 26, 2012) (conveying "concerns" to an employer "focused solely on [a plaintiff's] individual rights" is not protected speech and thus cannot support a Section 31-51q claim); *Veera Venkata Narasimha Narendra Phani Kottapalli v. ASML US, LP*, 2022 U.S. Dist. LEXIS 117501, at *9 (D. Conn. July 5, 2022) ("Speech relating to the terms and conditions of an employee's employment [or] the conditions of the employee's own work environment . . . do not rise to the level of public concern needed to plausibly state a § 31-51q claim."). Plaintiffs' § 31-51q claims accordingly must be dismissed against all of the Defendants.

### 3.   The Majority Of Faber's And Williams's Statutory Discrimination Claims Must Be Dismissed.

Faber and Williams's claims for discrimination, retaliation, and hostile work environment under Title VII, the ADA, and analogous provisions within Connecticut's Fair Employment Practices Act must be dismissed because Faber and Williams have either failed to exhaust their administrative remedies or pled sufficient facts to sustain those claims.[63]

---

[63] Plaintiff Ryan does not join these allegations.

**ORAL ARGUMENT REQUESTED**

> a.   **Faber And Williams Have Not Sufficiently Plead A Hostile Work Environment Claim.**

"[A] plaintiff alleging a hostile work environment 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were "sufficiently continuous and concerted" to have altered the conditions of her working environment.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation omitted).  Plaintiffs Williams and Faber allege they "were subject to harassment based on their religion from Defendants" that "was pervasive, chronic and severe and constitutes a hostile workplace."  But they offer no facts to support their threadbare recitation of that legal standard.

The law is well-settled that Walden's alleged "deprecating" comment to either Faber or Williams about possible new opportunities does not give rise to a hostile work environment claim.[64]  ECF No. 11, ¶¶ 217, 248   *See Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998) ("[S]tray remarks . . . do not constitute sufficient evidence to make out a case of employment discrimination."); *Faison v. Leonard St., LLC*, 2009 U.S. Dist. LEXIS 25078, at *8 (S.D.N.Y. Mar. 9, 2009) (dismissing a hostile work environment claim premised on "one remark . . . that raised the issue of the plaintiff's religion").

Likewise, Walden's alleged request to Faber for information about the sincerity of her religious beliefs during their accommodation discussions is equally insufficient to establish a

---

[64] Early in the Complaint, Plaintiffs allege Walden told Faber that "maybe God has led you to a new career, when God closes a door, he opens another."  ECF No. 11, ¶ 22.  However, the paragraphs directly supporting Plaintiffs' hostile work environment causes of action pivot to claim Walden made this comment to Williams, rather than Faber.  *See* ECF No. 11, ¶¶ 217, 247 (alleging "Plaintiff Williams surfaced [sic] the deprecating comment by Walden").  It is thus unclear who actually heard this comment.

**ORAL ARGUMENT REQUESTED**

hostile work environment [65]  ECF No. 11, ¶¶ 217, 248.  Walden's single request for information

was directly relevant and necessary to ESPN's assessment of the need for, and scope of, Faber's

requested accommodation.[66]  Even if Walden's query "engender[ed] offensive feelings in"

Faber, her single question cannot "affect the conditions of employment to [a] sufficiently

significant degree to violate Title VII."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67

(1986) (quotation omitted).  These claims accordingly must also be dismissed.

> **b.**    **Faber And Williams Exhausted A Discrete Set Of Discrimination Claims Against Just One Defendant—The Rest Must Be Dismissed.**

It is beyond cavil that a "plaintiff must first pursue available administrative remedies as a

precondition to filing a Title VII or [Connecticut Fair Employment Practices Act] claim in

federal court."  *Javier v. Deringer-Ney, Inc.*, 578 F. Supp. 2d 368, 372 (D. Conn. 2008).  Failing

to do so subjects those claims to dismissal under FRCP 12(b)(6), or alternatively 12(b)(1).[67]  As

---

[65]  Per the Complaint, Walden asked Faber for "[t]he name of her parish representative so Walden could 'discuss their opposition to vaccination, and what accommodation would be acceptable from a religious point of view.'"  Faber also claims Walden "hostilely," "snidely," and "threateningly" made this request.  However, "[a]llegations of . . . a display of poor temperament are insufficient to state a plausible hostile-environment claim."  *Faison*, 2009 U.S. Dist. LEXIS 25078, at *9 (S.D.N.Y. Mar. 9, 2009).

[66]  Contrary to Faber, whether her church supports or is opposed to vaccinations was an appropriate line of inquiry for ESPN.  The answer can evince whether her objections are truly religious in nature.  *See, e.g., Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 429 (E.D.N.Y. 2010) (*aff'd* 500 F. App'x 16, 18 (2d Cir. 2012)).

[67]  Defendants have appropriately raised Plaintiffs' failure to exhaust through a 12(b) motion based on the United States Supreme Court clarification that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."  *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851 (2019).  However, to the extent that the Court finds that the failure to exhaust the CFEPA deprives it of subject matter jurisdiction, Defendants respectfully request that the Court treat this aspect of the motion as one pursuant to 12(b)(1) instead of 12(b)(6) since they are reviewed under the same standards.  *Adonna v. United Elec., Radio & Mach. Workers*, 640 F. Supp. 2d 199, 202 (D. Conn. 2009) ("[M]otions to dismiss for [lack of] subject matter jurisdiction under

---

**ORAL ARGUMENT REQUESTED**

Faber's and Williams's respective charges prove, neither have exhausted the majority of their claims.

Faber's only presented her charge to the EEOC and New York State Division of Human Rights for one claim of religious discrimination against ESPN.  *See* Defs.' Req. for Judicial Notice, Ex. A.[68] Based on her charge, it is indisputable that Faber has not exhausted *any* claims against TWDC, or the individual defendants.[69]  *Maturo v. Nat'l Graphics, Inc.*, 722 F. Supp. 916, 924 (D. Conn. 1989) ("[A]n action under Title VII can proceed only against those . . . named as respondents in the complaint filed with the EEOC.").  Nor has she exhausted any of her Title VII retaliation or hostile work environment claims.  *Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 650 (2d Cir. 2011) (affirming "the district court properly dismissed [a plaintiff's] retaliation claim as unexhausted" where the "Charge did not include a claim of retaliation"). And finally, she has not exhausted *any* claims under the CFEPA. *See Ceslik v. Miller Ford, Inc.*, 2006 U.S. Dist. LEXIS 103929, at *6 (D. Conn. Feb. 9, 2006) ("A complaint

---

Rule 12(b)(1) are reviewed under the same standards as motions to dismiss for failure to state a claim under Rule 12(b)(6).").  *Compare Baker v. CT Transit*, 2020 U.S. Dist. LEXIS 227863, at *6 (D. Conn. Dec. 4, 2020) (analyzing a motion to dismiss for "failure to exhaust administrative remedies" prior to bringing Title VII and CFEPA claims "under 12(b)(6)") *with Dunbar v. Omnicom Grp., Inc.*, 2021 U.S. Dist. LEXIS 30124, at *17 (D. Conn. Feb. 18, 2021) ("With respect to CFEPA claims, unlike Title VII claims, a plaintiff's 'failure to . . . bring his complaint to the CHRO forecloses his access to judicial relief, because it deprive[s] the trial court of jurisdiction to hear his complaint.'") (citation omitted).

[68] This Court may take judicial notice of administrative filings without converting a motion to dismiss into a motion for summary judgment.  *See Jones v. Sansom*, 2022 U.S. Dist. LEXIS 59514, at *15 n.5 (D. Conn. Mar. 31, 2022) (taking judicial notice of "the Complaint [that] was filed with the EEOC" in ruling on a motion to dismiss).

[69] As to the individual Defendants, even if she named all eight, nothing would change. "[I]ndividuals are not subject to liability under Title VII."  *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000).  The CFEPA similarly "does not impose liability on individual employees." *Perodeau v. City of Hartford*, 259 Conn. 729, 744 (2002).

**ORAL ARGUMENT REQUESTED**

under CFEPA must be filed first with the CCHRO."); *Wright v. N.Y.C. Off-Track Betting Corp.*, 2008 U.S. Dist. LEXIS 22567, at *7 (S.D.N.Y. Mar. 24, 2008) ("Generally, presenting a disparate treatment . . . claim to the EEOC will not exhaust a hostile work environment claim."). None of these claims are properly before this Court, and must be dismissed with prejudice.

The same is true for Williams. Williams only filed her charge with the EEOC and the California Department of Fair Employment and Housing and did so only for religious discrimination and retaliation against ESPN.  *See* Defs.' Req. for Judicial Notice, Ex. B.[70] Williams, just like Faber, has thus failed to exhaust (1) her CFEPA claims, (2) her hostile work environment claims, or (3) *any* claim against any Defendant other than ESPN.  She also failed to exhaust her independent ADA claim.  *Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011) ("As with Title VII claims, plaintiffs asserting ADA claims must exhaust all available administrative remedies.").  As such, Williams is precluded from pursuing any of those causes of action in Court.

## IV.    THERE IS NO PERSONAL JURISDICTION OVER THE WALT DISNEY COMPANY, ITS EXECUTIVES, OR ITS BOARD MEMBERS.

Plaintiffs also never establish this Court's jurisdiction over TWDC, Bob Iger, Bob Chapek, Derica Rice, Susan Arnold, or Francis deSouza.  The Complaint therefore must be dismissed as to these Defendants regardless of the Court's determination as to the viability of any of Plaintiffs' causes of actions.

---

[70] *See supra* n. 68.

-40-

**ORAL ARGUMENT REQUESTED**

A. **Legal Standard**

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006); *Savage v. Scripto-Tokai Corp.*, 147 F. Supp. 2d 86, 87-88 (D. Conn. 2001) ("When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."). Because none of the Defendants identified above are Connecticut citizens[71] "the Court must engage in a two-step analysis" to determine if personal jurisdiction exists. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). First, it asks whether "the forum state's long-arm statute" reaches each of these Defendants. *Id.* Second, it analyzes "whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Id.*, 164.[72] Plaintiffs fail at step one.

---

[71] While Plaintiffs have affirmatively pled that TWDC is a citizen of Delaware and California, they have not pled the citizenship of any TWDC-affiliated individual Defendant. Instead, Plaintiffs incorrectly presume that their conclusory and factually unsupported allegation that these Defendants are state actors subjects them to this Court's jurisdiction. *See* ECF No. 11, ¶ 6.

[72] This requires the Court to determine whether the corporation has "sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" under the principles of general and specific jurisdiction. *Chloé*, 616 F.3d at 164. Contact with Connecticut, if "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State," will create general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 152 (2014) (citation omitted). However, the Second Circuit has cautioned against finding general jurisdiction as, "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). "Specific jurisdiction is very different." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). It exists only where "'the *suit*'" arises out of or relates "'to the defendant's contacts with the *forum*.'" *Id.* (emphasis in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923, 131 S. Ct. 2846, 2853 (2011)). "When there is no such connection, specific jurisdiction is

ORAL ARGUMENT REQUESTED

### B. Plaintiffs' Allegations Arise Out Of ESPN's, Not TWDC's, Connecticut Activities.

Connecticut's long-arm statute only permits jurisdiction over TWDC if Plaintiffs' claims "arise[] out of (1) a contract [with TWDC] made or performed in Connecticut; (2) business solicited by [TWDC] in Connecticut; (3) [TWDC's] production, manufacture, or distribution of goods used in Connecticut; or (4) tortious conduct by [TWDC] in Connecticut." *On Site Gas Sys. v. USF Techs., Inc.*, 553 F. Supp. 2d 182, 185 (D. Conn. 2008) (citing Conn. Gen. Stat. § 33-929(f)).

Plaintiffs' Complaint arises out of ESPN's allegedly tortious denial of their requests for a religious exemption from the COVID-19 vaccine mandate. But Plaintiffs improperly rely on group allegations that ESPN/Defendants caused their injury to implicate TWDC in the tort. [73] "[G]roup allegations that all defendants engaged in tortious conduct are not sufficient to establish long arm jurisdiction over a particular defendant." *Matthews v. SBA, Inc.*, 149 Conn. App. 513, 550 (2014).

Nor can Plaintiffs rely on TWDC's indirect parent subsidiary relationship with ESPN to circumvent the absence of alleged independent TWDC wrongdoing and thereby trigger

---

lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781.

[73] *See, e.g.*, ECF No. 11, ¶ 26 ("Walden sent Faber an email correspondence indicating ESPN's concerns about the religious nature of her request"); ¶ 35 ("ESPN did not go through with [Faber's] termination on the scheduled date"); ¶ 36 ("ESPN stated it was going to defer on ascertaining [Faber's] sincerity"); ¶ 45 ("ESPN conjured up a burden that simply did not exist and one that did not jibe with reality");¶ 63(d) ("As with Plaintiff Faber . . . ESPN conjured up a burden" to accommodating Williams "that simply did not exist and one that did not jibe with reality"); ¶ 72 ("Ryan was hired as an ESPN staff as a Remote Graphics Operator (full-time)."); ¶ 351 ("Plaintiff Ryan and ESPN entered into an Employment Agreement"); ¶ 352 ("Plaintiff Williams and ESPN signed a three-year employment agreement").

**ORAL ARGUMENT REQUESTED**

Connecticut's long-arm statute.[74]  "Each defendant's contacts with the forum State must be assessed individually."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).  And "the use of a subsidiary to transact business is not sufficient to subject a nonresident parent corporation to the jurisdiction of the forum in which that business is transacted."  *Hersey v. Lonrho, Inc.*, 73 Conn. App. 78, 82 (2002); *Barrett v. Walt Disney Co.*, 2003 U.S. Dist. LEXIS 19782, at *10 (D. Conn. May 1, 2003) (dismissing a claim against TWDC for lack of personal jurisdiction and noting a "parent corporation" should "not be called to defend against a lawsuit by virtue of its status as parent corporation").

It is equally irrelevant that TWDC—rather than various other Disney entities—allegedly "delivers its content and values through its new Disney+, Hulu and ESPN all in one bundle," which it sells in "Connecticut."[75]  Plaintiffs' claims do not "aris[e] out of or relate to" streaming content to customers in Connecticut.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quotation omitted); *see also* Conn. Gen. Stat. § 33-929(f) (stating the long-arm statute only reaches non-resident corporation "on any cause of action arising . . . [o]ut of" its contacts with Connecticut.  Plaintiffs sued TWDC for alleged violations of their religious rights, not so TWDC would release them from their Disney+ subscriptions.

Finally, TWDC is not subject to jurisdiction in Connecticut because ESPN allegedly applied "the Disney vaccine policy" to "ESPN employees."[76]  A parent company's "articulation of general policies and procedures" used by subsidiaries is perfectly "consistent with the parent's investor status."  *United States v. Bestfoods*, 524 U.S. 51, 72 (1998) (quotation omitted); *see also*

---

[74] ECF No. 11, ¶¶ 91(a), 93.
[75] ECF No. 11, ¶¶ 133–34.
[76] ECF No. 11, ¶¶ 97.

**ORAL ARGUMENT REQUESTED**

*Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988) ("[I]nterlocking directorates" are a "commonplace circumstance of modern business" and do "not furnish such proof of control as will permit a court to pierce the corporate veil."). This practice alone cannot "give rise to direct liability." *Bestfoods*, 524 U.S., at 72. Nor does it evince sufficient control to "justify treating a parent corporation and its subsidiary as a single employer." *Meng v. Ipanema Shoe Corp.*, 73 F. Supp. 2d 392, 403 (S.D.N.Y. 1999) (quotation omitted).[77]

Indeed, Defendants are unaware of "any case law in which a court has exercised specific personal jurisdiction over a parent corporation merely because of the parent's creation of a policy that was then implemented by the subsidiaries that employed the plaintiffs." *Wright v. Waste Pro USA Inc.*, 2019 U.S. Dist. LEXIS 124175, at *36–37 (D.S.C. July 25, 2019). "Such a formula would render a parent corporation liable to suit in literally any state where the employees of its subsidiaries live, so long as the parent engaged in any sort of corporate-wide policy-making upon which a suit could be brought." *Id.*, at 37; *see also In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 U.S. Dist. LEXIS 187318, at *17 (N.D. Cal. Sep. 29, 2021).

Ultimately, Plaintiffs are asking the Court to take the drastic step of piercing the corporate veil between ESPN and its indirect corporate parent (and thereby subject TWDC to jurisdiction in Connecticut) based on some shared corporate policies and intercompany content

---

[77] *Meng* analyzed whether a parent and its subsidiary were joint employers under Title VII. 73 F. Supp. 2d at 402. However, under both federal antidiscrimination law and Connecticut law, a company's "right to control" an employee is the touchstone for a joint employer analysis. *Id.* (noting "centralized control of labor relations" is the most important factor to gauging joint employment); *Doe v. Yale Univ.*, 252 Conn. 641, 680 (2000) ("Whether a joint venturer is an employer under the act is therefore a question of the specific joint venturer's degree of control over the alleged employee.").

ORAL ARGUMENT REQUESTED

distribution agreements.[78]  However, Courts may only "disregard the fiction of separate legal

entity when a corporation is a mere instrumentality or agent of another." *Hersey*, 73 Conn. App.

at 86 (quotation omitted).  And, that demands showing more than "control . . . merely through

dominating stock ownership." *Id.*  If Plaintiffs wanted to pierce the corporate veil they were

required to show "such domination of finances, policies and practices that the controlled

corporation has, so to speak, no separate mind, will or existence of its own." *Id.*  Plaintiffs have

not alleged any facts from which this Court may plausibly infer that ESPN has "no separate

mind, will or existence of its own." *Id.*

Instead, Plaintiffs generally note that (1) a TWDC subsidiary oversees the distribution of

ESPN's content;[79] (2) TWDC's CEO Iger once commented on ESPN's alleged decision not to

discipline Jemele Hill;[80] (3) ESPN's former and current president (John Skipper and James

Pitaro) used to work for TWDC-subsidiary Disney Media Networks;[81] and (4) Pitaro reports up-

to TWDC's CEO.[82]  None of these claims, even if true, show, or are relevant to assessing,

TWDC's alleged domination and control of ESPN.[83]  Even reading Plaintiffs' Complaint as

liberally as possible, nothing therein establishes this Court's jurisdiction over TWDC.

---

[78] ECF No. 11, ¶¶128.

[79] *Id.*, ¶¶137–38.

[80] *Id.*, ¶¶139.

[81] *Id.*, ¶¶140–41.

[82] *Id.*, ¶¶142.

[83] *Tucker v. Am. Int'l Grp., Inc.*, 745 F. Supp. 2d 53, 70 n.25 (D. Conn. 2010) (noting there are ten relevant factors to assess an alter-ego theory: "'(1) the absence of corporate formalities; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlapping ownership, officers, directors, personnel; (5) common office space, address, phones; (6) the amount of business discretion by the allegedly dominated corporation; (7) whether the corporations dealt with each other at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of debts of the dominated corporation; and (10) whether the corporation in

**ORAL ARGUMENT REQUESTED**

**C.   Plaintiffs Do Not Allege That The TWDC-Associated Defendants Committed A Tort In Connecticut.**

As with a non-resident corporation, Connecticut's long-arm statute will only reach the individual Defendants if Plaintiffs plead sufficient facts to show that each defendant (1) transacts business in the state, (2) committed a tortious act in Connecticut, or (3) committed a tortious act outside of Connecticut that hurt someone within it.  Conn. Gen. Stat. § 52-59b(a).  As demonstrated above, Gifford and Walden are the only individual Defendants who participated in the alleged wrongful conduct; both were ESPN employees at the relevant time and are subject to jurisdiction in Connecticut.  The same is not true for Iger, Chapek, Rice, Arnold, and deSouza.  As noted above, none are Connecticut residents, and Plaintiffs do not allege otherwise.  Nor have Plaintiffs alleged that any of these individuals was personally involved in either denying their accommodation request or terminating their employment with ESPN.  The sole role of these individuals is to bolster the nonexistent connection Plaintiffs are trying to create between TWDC and the federal government.  That is not a basis to subject any of these TWDC current and former C-suite executives and Board Members to a lawsuit former ESPN employees brought in Connecticut.

**V.   THE STATE ACTOR ALLEGATIONS SHOULD BE STRICKEN.**

"Pursuant to Federal Rule 12(f) of Civil Procedure, '[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.'"  *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (quoting Fed. R. Civ. P., R. 12(f)).  Defendants have more than met their burden of demonstrating that Plaintiffs' allegations attempting to

---

question had property that was used by other of the corporations as if it were its own.'") (quoting *Naples*, 295 Conn. at 233).

**ORAL ARGUMENT REQUESTED**

establish a connection between them and the US government must be stricken.  Defendants now "demonstrate that (1) no evidence in support of the allegations would be admissible;" (2) "the allegations have no bearing on the issues in the case;" and (3) "to permit the allegations to stand would result in prejudice to" Defendants.  *Id.*  Accordingly, this Court should strike paragraphs 90-203 of the Complaint in their entirety.

Plaintiffs plead their claims for religious discrimination and retaliation in the first 89 paragraphs of the Complaint.  What follows is a barrage of disjointed allegations that ping erratically from, for example, Walt Disney's work for the FBI[84] to President Obama founding a basketball league in Africa[85] to Roger Goodell's father opposing the Vietnam War,[86] all in a futile effort to support their unfounded supposition that "the military works with nearly all major sports to influence and shape public opinion using [ESPN]."[87]  Allowing these allegations to stand runs contrary to the essential function of a Rule 12(f) motion: "to create a clear mechanism for the court to save time and expense by eliminating" meritless and irrelevant allegations "from the pleadings."  *Snellinger v. Fannie Mae*, 2022 U.S. Dist. LEXIS 95796, at *4 (S.D.N.Y. May 27, 2022); *New Dyckman Theatre Corp. v. Radio-Keith-Orpheum Corp.*, 16 F.R.D. 203, 206 (S.D.N.Y. 1954) (striking alleged wrongdoing in the motion picture industry that spanned 30 years before the filing).

These allegations are rooted in conjecture and hearsay.  None of the Plaintiffs claim hearing about, or being privy to, any of these alleged conversations.  None of them witnessed

---

[84] ECF No. 11, ¶ 91(vii).
[85] ECF No. 11, ¶ 163.
[86] ECF No. 11, ¶ 190.
[87] ECF No. 11, ¶ 202.

**ORAL ARGUMENT REQUESTED**

any of these alleged events.  And most do not even involve people or companies against whom Plaintiffs directed this action.  Rather, Plaintiffs cite and quote various articles as evidentiary support for their far-fetched contention that Defendants acted under "color of law" when ESPN denied Plaintiffs' accommodation requests.  Neither the articles, nor their contents, are admissible.  *Howley v. Town of Stratford*, 217 F.3d 141, 155 (2d Cir. 2000) ("[T]estimony as to facts must generally be based on the witness's personal knowledge."); *Mandal v. City of N.Y.*, 2006 U.S. Dist. LEXIS 85216, at *3 (S.D.N.Y. Nov. 26, 2006) ("Newspaper articles are usually inadmissible hearsay.").

Further, Plaintiffs' foray into eight decades of alleged corporate history, and their beliefs regarding the creation of the military-industrial complex's entertainment wing, have no bearing on this case, which only involves ESPN's decision to deny three former employees a religious exemption from a vaccine mandate.  *Kidder v. Hanes*, 2023 U.S. Dist. LEXIS 67741, at *13 (W.D.N.Y. Apr. 18, 2023) ("Averments of evidentiary facts or superfluous historical allegations may be subject to a Motion to Strike.").

Finally, litigating these bygone issues would waste this court's time, prejudice Defendants, and confuse the real issues in this case.  *New Dyckman Theatre Corp.*, 16 F.R.D. at 205–06 (if allegations about events "of past decades" were not stricken, the complaint would become "a springboard from which the parties dive off into an almost bottomless sea of interrogatories, depositions, and pre-trial proceedings on collateral issues, most of which may have little relationship to the true issue in the case."); *In re Agent Orange Prod. Liab. Litig.*, 475 F. Supp. 928, 936 (E.D.N.Y. 1979) (striking "425 paragraphs [] regarding the corporate history of the defendants" as they were "unnecessary" and "burdensome to answer.").

**ORAL ARGUMENT REQUESTED**

This lawsuit is not about the government.  It is not about what a retired general told various NBA players, or the military-industrial complex's alleged attempts to use television to brainwash the masses.  This case is about three Plaintiffs, all of whom sought (and did not receive) an exemption from ESPN's COVID-19 vaccine mandate.  The Court should thus strike all of their superfluous, immaterial "state actor" allegations.

## VI.    <u>CONCLUSION</u>

Faber and Williams exhausted a specific set of religious discrimination claims under Title VII against ESPN; and pled sufficient facts in their Amended Complaint to support them. Everything else in the Amended Complaint fails.  None of the Defendants are state actors.  Most were not identified in Plaintiffs' EEOC charge.  And Plaintiffs fail to offer supporting facts for several of their causes of action, or establish this Court's jurisdiction over many of the Defendants.  Instead, Plaintiffs spend most of the Complaint winding through hundreds of paragraphs of irrelevant conspiracy theories. For the foregoing reasons, this Court should (1) dismiss Plaintiffs' First and Third Causes of Action against TWDC and the individual Defendants, with prejudice; (2) dismiss their remaining Causes of Action against all Defendants, with prejudice; and (3) strike paragraphs 90–203 from the Amended Complaint.

**ORAL ARGUMENT REQUESTED**

Dated: May 26, 2023                    Respectfully submitted,


                                        By:    */s/Raymond W. Bertrand*
                                               Raymond W. Bertrand (CT421237)
                                               James P. de Haan (*Pro Hac Vice Pending*)
                                               PAUL HASTINGS LLP
                                               4747 Executive Drive
                                               12th Floor
                                               San Diego, California  92121
                                               Telephone:   1(858) 458-3000
                                               Facsimile:    1(858) 458-3005
                                               Email:  raymondbertrand@paulhastings.com
                                                        jamesdehaan@paulhastings.com

                                               Counsel for Defendants
                                               ESPN Productions, Inc., ESPN, Inc., The Walt
                                               Disney Company, Julie Walden, Amanda
                                               Gifford, James Pitaro, Bob Iger, Bob Chapek,
                                               Derica W. Rice, Susan E. Arnold, and Francis
                                               A. deSouza

**ORAL ARGUMENT REQUESTED**